# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHABAN ALI RAFAT,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Respondents. | Case No. 1:26-cv-06056-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a national of Afghanistan who belongs to the Hazara ethnic minority and comes from a family with a Shia religious background. (ECF No. 1-1 at 4.[1]) After registering for a U.S. Customs and Border Protection ("CBP") One application ("CBP One app") appointment[2]

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

[2] The "Circumvention of Lawful Pathways" Rule "applies a 'presumption of ineligibility for asylum' to noncitizens who transited through another country before arriving at the southern border between May 11, 2023 and May 11, 2025." Morales v. Blanche, 190 F.4th 1145, 1155 (9th Cir. 2026). "Under the Rule, all

on August 23, 2024, Petitioner waited in Chiapas, Mexico for his appointment to be scheduled. On January 21, 2025, Petitioner was mugged and severely beaten in Mexico. He had been waiting for the CBP One app appointment to no avail for over six months. On January 21, 2025, at 10:00 p.m., Petitioner entered the United States through the Lukeville, Arizona boarder and surrendered himself to immigration officers who took his personal information, registered him, and confiscated his passport. (ECF No. 1 at 2.)

On January 22, 2025, Petitioner was informed that he had been ordered removed via expedited removal. (ECF No. 8 at 10.) That same day, Petitioner received his first interview with a U.S. Citizenship and Immigration Services ("USCIS") officer. After a two-hour interview, Petitioner was informed that he was ordered removed from the United States but was granted withholding of removal to Afghanistan.[3] (ECF No. 1 at 3.)

Subsequently, Petitioner was transferred to several detention facilities in Arizona and on February 1, 2025, he was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. On March 18, 2025 at the NWIPC, Petitioner received his Convention Against Torture ("CAT") interview, which determined that it was more likely than not that Petitioner would be tortured if he was returned to Afghanistan. (ECF No. 1 at 3; ECF No. 1-1 at 21.) On June 7, 2025, Petitioner was transferred to the Adelanto, California Detention Center. On January 20, 2026, he was transferred to the California City Detention Facility where he remains to this day. (ECF No. 1 at 3.)

On July 31, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On August 28, 2026, Respondents filed a response, and Petitioner filed a reply on September 4, 2026. (ECF Nos. 8, 9.)

---

non-Mexican adults and families seeking asylum are presumed ineligible for such relief unless they meet one of the Rule's limited exceptions" such as "'[p]resent[ing] at a port of entry' with a prescheduled appointment made through a smartphone on the" CBP One app. Morales, 190 F.4th at 1155 (second alteration added).

[3] Under the March 2022 interim final rule entitled "Procedure for Credible Fear Screening and Consideration of Asylum, Withholding of Removal and Convention Against Torture Protection Rule," USCIS officers were authorized to consider asylum applications for certain individuals subject to expedited removal who establish fear of persecution or torture during their credible fear interview. Prior to this rule, such cases were decided exclusively by immigration judges. (ECF No. 1-1 at 16.)

## II.

## DISCUSSION

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.' § 1231(a)(1)(A). The statute provides that the Government 'shall' detain noncitizens during the statutory removal period. § 1231(a)(2)."[4] Id. at 578 (some internal quotation marks omitted).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

[4] "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (citing 8 U.S.C. § 1231(a)(1)(B)).

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

"In *Zadvydas,* the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period." Jennings v. Rodriguez, 583 U.S. 281, 298–99 (2018) (internal citations omitted). Here, Petitioner was ordered removed on January 22, 2025, and he has been detained beyond the six-month presumptively reasonable period.

"Courts routinely find that noncitizens" who "cannot be removed to" the country listed in their removal orders and do "not have citizenship or significant ties to any other count[r]y, and [where] there is no evidence that any other country is willing to accept [a] third country removal under 8 U.S.C. § 1231(b)(2)(E)," "have met their initial burden under *Zadvydas*." Elshourbagy v. Bondi, 817 F. Supp. 3d 1102, 1109 (W.D. Wash. 2025) (collecting cases). Here, Petitioner was granted withholding of removal to Afghanistan, and it does not appear that Petitioner has citizenship or significant ties to any other country. Respondents have provided no evidence that any country is willing to accept Petitioner for a third-country removal under 8 U.S.C. § 1231(b)(2)(E). "[T]hird country removal still requires the affirmative assent of the receiving country." Ndandu v. Noem, No. 3:25-cv-02939-RBM-MSB, --- F. Supp. 3d ----, 2026 WL 25848, at *5 (S.D. Cal. Jan. 5, 2026) (citing 8 U.S.C. § 1231(b)(2)(E)(vii)). "Even if Petitioner was to be removed to a third country, that process 'would require additional, lengthy proceedings' because of Petitioner's right to seek fear-based relief." Riveros Cadavid v. Dep't of Homeland Sec., No. EDCV 26-01805-KK-DTBX, 2026 WL 1105032, at *3 (C.D. Cal. Apr. 17,

2026) (quoting Ndandu, 2026 WL 25848, at *5). "Among other things, Petitioner 'likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings,' which 'further demonstrates that removal is not likely in the reasonably foreseeable future.'" Riveros Cadavid, 2026 WL 1105032, at *3 (quoting Ndandu, 2026 WL 25848, at *5).

Based on the foregoing and under Zadvydas, the Court finds Petitioner's continued detention is unreasonable and no longer authorized by statute.[5] Therefore, Petitioner should be released on appropriate conditions of supervision. See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period).

**III.**

**RECOMMENDATION**

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on Count II.
2. Respondents be directed to immediately release Petitioner under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5.
3. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

[5] Given this conclusion, the Court declines to address Petitioner's other claims for relief.

Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 6, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE